1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT

9                       SOUTHERN DISTRICT OF CALIFORNIA

10

11   CARLOS HERNANDEZ,              )      Case No. 10cv2360-WQH (BLM)
                                    )
12                  Petitioner,     )      **REPORT AND RECOMMENDATION**
     v.                             )      **FOR ORDER DENYING PETITION**
13                                  )      **FOR WRIT OF HABEAS CORPUS**
     MATTHEW CATE, Warden,          )
14                                  )
                    Respondent.     )
15                                  )
     _____    )
16

17          This Report and Recommendation is submitted to United States District Judge William Q.

18   Hayes pursuant to 28 U.S.C. § 636(b) and Civil Local Rules 72.1(d) and HC.2 of the United States

19   District Court for the Southern District of California.  On November 15, 2010, Petitioner Carlos

20   Hernandez, a state prisoner who is proceeding *pro se* and *in forma pauperis*, commenced these

21   habeas corpus proceedings pursuant to 28 U.S.C. § 2254.  ECF No. 1.  Petitioner challenges his

22   convictions of forcible sodomy with the use of a deadly weapon and forcible rape with the use

23   of a deadly weapon, as well as the finding that he committed both sex crimes during the

24   commission of a burglary (the burglary having been committed with the intent to commit a

25   forcible sex crime).  Id. at 2; Mem. P. & A. Supp. Answer (Resp't Mem.) at 2.  Respondent filed

26   an answer on February 18, 2011.  ECF No. 9.  Petitioner did not file a traverse.

27          This Court has considered the Petition and Answer and all supporting documents filed by

28   the parties.  For the reasons set forth below, this Court **RECOMMENDS** that Petitioner's Petition

1   for Writ of Habeas Corpus be **DENIED**.

2   <u>**FACTUAL AND PROCEDURAL BACKGROUND**</u>

3       The following facts are taken from the California Court of Appeal's opinion in <u>People v.</u>

4   <u>Hernandez</u>, Appeal No. D053807, slip op. (Cal. Ct. of App. Dec. 17, 2009).  <u>See</u> Lodgment 10.

5   This Court presumes the state court's factual determinations to be correct absent clear and

6   convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1); <u>Miller-El v. Cockrell</u>, 537 U.S. 322,

7   340 (2003); <u>see</u> <u>also</u> <u>Parke v. Raley</u>, 506 U.S. 20, 35-36 (1992) (holding findings of historical

8   fact, including inferences properly drawn from such facts, are entitled to statutory presumption

9   of correctness).

10   FACTUAL AND PROCEDURAL BACKGROUND

11       The victim was the main witness for the prosecution.  She lived in a one-
     bedroom cottage with her two-year-old daughter.  The victim had seen Hernandez
12   two or three times at church where he was introduced as "Carlos."  She had also
     seen Hernandez in her neighborhood, but had no direct contact with him.

13

14       On August 4, 2007, the victim returned home from work around 7:00 p.m.
     and began cooking dinner for her daughter's father, Rufino Perez.  After dinner,
     Perez stayed to talk.  The victim fell asleep on the bed with her daughter.  She
15   testified that Perez always locked the outside door when he left.

16       A noise awakened the victim early the following morning.  She saw a
     shadow and demanded, "Who's there?"  A person moved toward her saying, "Be
17   quiet.  I'm Carlos."  She recognized the voice and face as belonging to Hernandez.
     The victim reached for her cellular and land-line phones which were on a table next
18   to the bed.  Hernandez grabbed the phones and threw them aside saying, "Don't
     try it."
19
        Hernandez told the victim "that he had killed and he was fleeing . . . from
20   the police because he had killed a policeman."  Thinking that Hernandez wanted
     help, the victim indicated that he could stay on the sofa in the living room.
21   However, Hernandez said that he "wanted to be with" her.  The victim was unsure
     what Hernandez wanted until he started to touch her feet and legs.  At that point,
22   she realized that Hernandez was trying to talk her into having sex with him.
     Hernandez was carrying a two-foot-long metal object later described by Hernandez
23   as an exercise bar.  She also testified that Hernandez stunk of alcohol.  The victim
     was afraid for herself and her daughter.
24
        Hernandez repeated his demand that the victim let him be with her "just
25   once," and she asked him to respect her.  She attempted to cover herself with
     blankets and cross her feet, which angered Hernandez.  He gave her ten minutes
26   to give in and let him have sex with her or "something bad was going to happen."
     Hernandez held the metal object near his chest.  Meanwhile, the victim's daughter
27   woke up and moved toward the victim to nurse.  She covered her daughter so she
     could not see Hernandez.

28

2

The victim's daughter began to cry.  Hernandez initially refused to let the victim prepare a bottle for the child, then grabbed the victim and took her to the kitchen.  Hernandez repeatedly told the victim to keep her daughter quiet.  Finally the victim said, "Let me give her a bottle and then do whatever you want with me."  The victim thought that Hernandez was going to hurt her or her daughter and therefore believed that she had no choice.

They returned to the bedroom and the victim gave her daughter the bottle.  Hernandez would not leave her alone, played with her body and took off her panties.  While the victim tried to quiet the child, Hernandez sodomized her.

Hernandez turned the victim on her back, but she got on the floor so her daughter could not see what was happening.  The victim felt the metal rod on the floor and pushed it farther under the bed.  Hernandez lost his erection and was unable to penetrate the victim's vagina.  In frustration, he hit the floor next to the victim's face.  Hernandez tried to suck the victim's breasts, but she asked him not to do so because her daughter was still breastfeeding.  At trial, the victim had trouble remembering whether Hernandez was able to penetrate her vagina or ejaculated in her genital area, but testified that "yes, he did put it in."

After ejaculating, Hernandez got off the victim and said, "Forgive me.  Forgive me. . . . I don't know why I came here to do that."  He also told her that something bad would happen if she called the police.  Hernandez took the metal bar and left.

The victim called Perez for help, and he called the police.  The investigating officer found the victim on the bed in the fetal position crying.  She cried throughout the interview, making it difficult for the officer to get a statement.  The victim agreed to undergo a sexual assault examination.  Results of DNA analysis showed that Hernandez was the likely contributor of the semen taken from the victim's genital area.  The police investigation revealed pry marks around the door frame of the victim's house.

Police arrested Hernandez at work.  Detective Steve Bernier interviewed him with the help of an interpreter.  The prosecution played a video of the interview at trial.  When told he would be tested for drugs, Hernandez stated that the test would likely show the presence of crystal, marijuana and beer.  He also admitted using $20 worth of "crystal" and told Bernier that he was "crazy" on beer and crystal when he went to the victim's apartment.  He also stated he went there because he "wanted her" and had desired her for about six months.  Throughout the interview Hernandez maintained the victim consented to having sex with him, acknowledging that he threatened to hurt her "just once."  He told Bernier that he lied about killing someone to scare the victim into submission.  He also acknowledged carrying the metal exercise bar and agreed to accompany police to his residence to retrieve it.  Hernandez admitted sodomizing the victim but said that she told him to "do it" to her.

Hernandez told Detective Bernier that he wanted to repay the victim for what he did.  At the end of the interview, Hernandez dictated a note which the interpreter transcribed in English.  The prosecution read the note to the jury over defense counsel's objection.  The note read: "[F]orgive me for committing an error and because I didn't think before I committed the error.  Because of that moment, the passion I had for you, I committed this stupidity.  Forgive me.  I want you to accept my apology and forgive me.  Forgive me.  Could you please let me know that you have forgiven me?  Could you please call my mother and let her know

1     where I am?  Please have everyone pray for me.  Carlos."

2 Lodgment 10 at 2-5.

3        In July of 2008, the People of the State of California filed an amended information

4 charging Petitioner with two felonies for his actions against the victim.  Lodgment 1 at 7-9.

5 Following a trial, the jury found Petitioner guilty of one count of sodomy by use of force in

6 violation of California Penal Code[1] § 286(c)(2) and one count of forcible rape, in violation of Penal

7 Code § 261(a)(2).  <u>Id.</u> at 68, 70.  The jury further found true allegations that Petitioner

8 perpetrated both crimes during the commission of a burglary (as defined in Penal Code § 460(a))

9 with the intent to commit a forcible sex crime (in violation of Penal Code § 261(a)(2) or

10 286(c)(2)) within the meaning of Penal Code § 667.61(a)(c)(d) (California's "One Strike" law).

11 <u>Id.</u>  Finally, the jury found true allegations that Petitioner personally used a dangerous and

12 deadly weapon (within the meaning of Penal Code § 667.61(b)(c)(e) and (a)(c)(e)) and used a

13 deadly weapon (within the meaning of Penal Code § 12022.3(a)) during the commission of both

14 felonies.  <u>Id.</u> at 68-71.  On September 19, 2008, the trial judge sentenced Petitioner to 50 years

15 to life plus a consecutive 8-year term.  <u>Id.</u> at 101; Lodgment 2, vol. 3 at 361; Lodgment 10 at

16 2.

17        Petitioner appealed his conviction, arguing that (1) the trial court violated his state and

18 federal constitutional rights to due process and to present a defense by failing to instruct the jury

19 regarding his theory of the defense—a good faith belief that the victim consented, and (2) his

20 state and federal due process rights and his Sixth Amendment right to an adequate jury finding

21 were violated when the trial court failed to instruct *sua sponte* on unanimity (because the

22 evidence supporting his intent in committing the burglary involved two discrete sex crimes).

23 Lodgment 4.  The Court of Appeal, Fourth Appellate District, Division One heard oral argument

24 on October 13, 2009.  Lodgment 7.  Thereafter, the appellate court ordered the parties to submit

25 supplemental letter briefs addressing the following question:

26       When pleading a special allegation under Penal Code section 667.61, subdivisions
      (a) and (d)(4), must the prosecution allege that defendant committed burglary

27       with the specific intent to commit a *specific* sexual offense listed in subdivision (c),

28      [1] All further references to the Penal Code shall refer to the California Penal Code.

1  or may the prosecution allege he committed burglary with the specific intent to commit any sexual offense listed in subdivision (c)?

2

3  Id.  Both parties submitted the requested letter briefs and the court took the matter under

4  submission.  Id.; Lodgments 8 & 9 (letter briefs).  On December 17, 2009, the court of appeal

5  published a lengthy written opinion affirming the judgment of the trial court.  Lodgment 10.

6  Petitioner filed a petition for review in the California Supreme Court reasserting the same

7  two claims and also arguing that the reasonableness of Petitioner's belief that the victim

8  consented is a question for the jury, not the judge (and thus, the judge should have given

9  Petitioner's requested consent instruction).  Lodgment 11.  On March 30, 2010, the California

10  Supreme Court summarily denied the petition for review without citation of authority.  Lodgment

11  12.

12  **SCOPE OF REVIEW**

13  Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal

14  habeas corpus claims:

15  The Supreme Court, a Justice thereof, a circuit judge, or a district court shall
    entertain an application for a writ of habeas corpus in behalf of a person in custody

16  pursuant to the judgment of a State court only on the ground that he is in custody
    in violation of the Constitution or laws or treaties of the United States.

17

18  28 U.S.C. § 2254(a) (1996).

19  The Petition was filed after enactment of the Anti-terrorism and Effective Death Penalty

20  Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214.  Under 28 U.S.C. § 2254(d), as

21  amended by AEDPA:

22  (d) An application for a writ of habeas corpus on behalf of a person in
    custody pursuant to the judgment of a State court shall not be granted with

23  respect to any claim that was adjudicated on the merits in State court proceedings
    unless the adjudication of the claim—

24

25  (1) resulted in a decision that was contrary to, or involved an unreasonable
    application of, clearly established Federal law, as determined by the Supreme Court
    of the United States; or

26

27  (2) resulted in a decision that was based on an unreasonable determination
    of the facts in light of the evidence presented in the State court proceeding.

28  28 U.S.C. § 2254(d) (1996).  Summary denials are presumed to constitute adjudications on the

merits unless "there is reason to think some other explanation for the state court's decision is more likely." Harrington v. Richter, 131 S.Ct. 770, 784-785 (2011). In making this determination, a court may consider a lower court's analysis. Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991) (authorizing a reviewing court to look through to the last reasoned state court decision).

A state court's decision is "contrary to" clearly established federal law if the state court: (1) "applies a rule that contradicts the governing law set forth in [Supreme Court] cases"; or (2) "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

A state court's decision is an "unreasonable application" of clearly established federal law where the state court "'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413). "[A] federal habeas court may not issue [a] writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be *objectively unreasonable*." Id. at 75-76 (emphasis added) (citations and internal quotation marks omitted). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412.

If the state court provided no explanation of its reasoning, "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]." Harrington, 131 S.Ct. at 786. In other words, a federal court may *not* grant habeas relief if any fairminded jurist could find the state court's ruling consistent with relevant Supreme Court precedent.

///

1    Finally, habeas relief also is available if the state court's adjudication of a claim "resulted

2    in a decision that was based on an unreasonable determination of the facts in light of the

3    evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2) (1996); Wood v.

4    Allen, 130 S.Ct. 841, 845 (2010).  A state court's decision will not be overturned on factual

5    grounds unless this Court finds that the state court's factual determinations were objectively

6    unreasonable in light of the evidence presented in state court.  See Miller-El v. Cockrell, 537 U.S.

7    322, 340 (2003); see also Rice v. Collins, 546 U.S. 333, 341-42 (2006) (the fact that

8    "[r]easonable minds reviewing the record might disagree" does not render a decision objectively

9    unreasonable).  This Court will presume that the state court's factual findings are correct, and

10   Petitioner may overcome that presumption only by clear and convincing evidence.  See 28 U.S.C.

11   § 2254(e)(1); Schriro v. Landrigan, 550 U.S. 465, 473-474 (2007).

12                                    **DISCUSSION**

13   Petitioner raises two grounds for relief in his Petition.  First, he contends that the trial

14   court violated his due process rights under the Fifth and Fourteenth Amendments as well as his

15   right to present a defense, as guaranteed by the Sixth Amendment, by failing to instruct the jury

16   that the reasonable, but mistaken, belief that the victim has consented is a defense to forcible

17   rape and forcible sodomy.  Pet. at 6; Pet'r Mem. at 1-2.  Petitioner contends that reasonableness

18   is a determination that must be made by the jury, not the judge.  Id.  Second, Petitioner alleges

19   that his Sixth Amendment rights were violated because he was not given notice of the exact

20   charges against him.  Pet'r Mem. at 2.  Specifically, the charges against him triggered California's

21   One Strike sentencing law, which required a showing that Petitioner committed burglary with the

22   specific intent to commit one of the sexual offenses enumerated under California Penal Code

23   § 667.61(c).  Pet. at 7; Pet'r Mem. at 2-4.  Because some jurors could have convicted him under

24   the belief that he committed the burglary with the specific intent to rape the victim while others

25   believed he harbored the specific intent to sodomize the victim, Petitioner argues he was denied

26   his right to a unanimous jury verdict.  Id.  Failure to require this specificity violated Apprendi v.

27   New Jersey, 530 U.S. 66 (2000) and Cunningham v. California, 549 U.S. 270 (2007), according

28   to Petitioner, because when a defendant's specific intent increases the statutory maximum for

1  the offense, that intent is tantamount to an element of the offense and thus must be pled and

2  proven to a jury beyond a reasonable doubt.  Pet'r Mem. at 4.

3  **A.    The Trial Court's Failure to Instruct on Petitioner's Alleged Reasonable, but Mistaken Belief that the Victim Consented**

4

5  Petitioner argues that the trial court violated the Fifth, Sixth, and Fourteenth Amendments

6  and his due process rights under the California constitution by failing to instruct the jury that the

7  reasonable, but mistaken, belief that the victim has consented is a defense to forcible rape and

8  forcible sodomy.  Pet. at 6; Pet'r Mem. at 1-2.  He further contends that the question of the

9  reasonableness of Petitioner's belief should have been submitted to the jury, not decided by the

10  trial judge.  Pet. at 6.

11  In his answer, Respondent contends that Petitioner is not entitled to habeas relief.  To the

12  extent Petitioner objects to the state court's application of state law, Respondent submits that

13  this Court cannot address that issue on habeas review.  Resp't Mem. at 6.  In regard to

14  Petitioner's allegations that the trial court's action violated his Constitutional rights, Respondent

15  argues that Petitioner's claim lacks merit and must be denied.  Id.

16  Petitioner bases his claim on a state law, which provides that a defendant's reasonable

17  belief that a victim consented to sexual intercourse is a defense to forcible rape.  People v.

18  Mayberry, 15 Cal.3d 143, 155 (1975).  The Mayberry defense, as it is commonly referred to, has

19  a subjective and an objective component.  People v. Williams, 4 Cal. 4th 354, 360 (1992).  In

20  order to satisfy the subjective component, the defendant must show that he "honestly and in

21  good faith, albeit mistakenly, believed that the victim consented to sexual intercourse" by

22  adducing "evidence of the victim's equivocal conduct on the basis of which he erroneously

23  believed there was consent."  Id. at 360-61.  The objective component "asks whether the

24  defendant's mistake regarding consent was reasonable under the circumstances."  Id. at 361.

25  Only when both of these prongs are satisfied will the instruction be given.  Further, "a trial court

26  must give a requested instruction only when the defense is supported by 'substantial evidence,'

27  that is, evidence sufficient to 'deserve consideration by the jury,' not 'whenever *any* evidence is

28  presented, no matter how weak.'"  Id. (quoting People v. Flannel, 25 Cal. 3d 668, 684-685 and

n. 12 ((1979)).

The California Supreme Court did not offer a reasoned opinion on this claim, but the court of appeal rejected it on the grounds that there was no substantial evidence in the record supporting the objective component of the <u>Mayberry</u> defense.  Lodgment 10 at 8-9.  In other words, the court concluded that Petitioner's mistaken belief that the victim consented was not reasonable under the circumstances.  <u>Id.</u>  To the extent Petitioner challenges the state court's application of state law, Respondent is correct that Petitioner's claim is not cognizable on federal habeas review.  <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); <u>Matylinsky v. Budge</u>, 577 F.3d 1083, 1094 n.4 (9th Cir. 2009) (same).

Insofar as Petitioner alleges his federal constitutional rights were violated, Petitioner must demonstrate that the state court's decision was contrary to the Supreme Court's clearly established precedent regarding when a judge must instruct on a defense theory.  <u>See</u> <u>Williams</u>, 529 U.S. at 405-06.  "As a general proposition, a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." <u>Matthews v. United States</u>, 485 U.S. 58, 63 (1988); <u>U.S. v. Bush</u>, 626 F.3d 527, 539 (9th Cir. 2010) (quoting <u>United States v. Bello-Bahena</u>, 411 F.3d 1083, 1088-89 (9th Cir. 2005) ("A defendant is entitled to have the judge instruct the jury on his theory of defense, provided that it is supported by law and has some foundation in the evidence.")).  In other words, due process requires a defense instruction to be given only when the evidence warrants the instruction.  <u>See</u> <u>Hopper v. Evans</u>, 456 U.S. 605, 611 (1982).

Petitioner's claim fails for several reasons.  As an initial matter, Petitioner does not identify in his habeas petition any specific facts that entitled him to a consent instruction.  Rather, Petitioner argues that the judge was required to give the mistaken belief instruction because it was consistent with Petitioner's version of the incident, "even if the [supporting] evidence is not of a character to inspire belief." Pet. at 6.  This argument misstates the applicable law.  As set forth above, a theory of defense instruction is only required under both federal and state law <u>if</u> there is evidence warranting the instruction.  <u>Matthews</u>, 485 U.S. at 63; <u>Hopper</u>, 456 U.S. at 611;

Bush, 626 F.3d at 539; Williams, 4 Cal. 4th at 361.

Because Petitioner does not address in his Petition the facts justifying the requested jury instruction, the Court will consider the facts highlighted in his state court pleadings.   In his petition for review by the California Supreme Court, Petitioner argued that the following evidence supported his reasonable, but mistaken, belief that the victim consented: (1) although Petitioner held a metal bar and made verbal threats, he used no actual physical restraint or violence to perpetrate the intercourse, (2) the victim took the metal bar, which Petitioner left on the floor, and pushed it under the bed, (3) Petitioner told the victim he wanted her and then touched and caressed her feet and legs, and (4) he asked for permission.[2]   Lodgment 11 at 13-14.   As previously noted, a defendant is entitled to a defense instruction only if it is a recognized defense and "there exists evidence sufficient for a reasonable jury to find in his favor."   Matthews, 485 U.S. at 63.   It is well-established California law that consent is a defense to forcible rape and forcible sodomy and Judicial Council of California Criminal Jury Instructions 1000 (forcible rape) and 1030 (forcible sodomy) provide model jury instructions for this defense.   See Mayberry, 15 Cal. 3d at 155; Cal. Crim. 1000 (2010); Cal. Crim 1030 (2010).   However, legal consent has two elements: Petitioner's subjective belief that the victim consented and objective evidence that such a belief was reasonable.   Williams, 4 Cal. 4th at 360-61.   The question then is whether there is sufficient evidence for a reasonable jury to find both factors in Petitioner's favor.   Here, Petitioner admits he had a weapon, he verbally threatened the victim, and he lied about having killed a police officer in order to scare her into submission.   Lodgment 10 at 5.   While he maintains he asked the victim for permission, she testified that he gave her ten minutes to give in and let him have sex with her or "something bad was going to happen."   Lodgment 2, vol. 2 at 117-18.   This hardly represents an unconditional request for permission.   Petitioner's

---

[2]   In the opening brief Petitioner filed in the court of appeal, Petitioner maintained the following facts entitled him to a consent instruction: (1) he knew the victim from church, (2) he desired her sexually, (3) he requested sex, (4) he did not use actual physical violence against the victim to get her to acquiesce (noting that, though he had the metal bar with him, he put it on the floor and the victim put it under the bed before sexual activity occurred), (5) the victim admitted that Petitioner used the phrase "if I allowed him to be with me" and further admitted that she acquiesced (specifically, by saying "Let me give [my daughter] a bottle and then do whatever you want with me"), and (6) the victim got down on the floor so that her daughter could not see the sexual activity.   Lodgment 4 at 24, 30.

interpretation of the victim's statement "Let me give [my daughter] a bottle and then do whatever you want with me" as granting him permission also is objectively unreasonable, given that the victim testified she was afraid and felt she had no choice if she wanted to protect her daughter.  <u>See id.</u> at 122.  Moreover, the trial record reveals that Petitioner broke into the victim's house while she was sleeping and threw her cellular and land-line phones when she reached for them, saying "[d]on't try it."  <u>Id.</u> at 110, 114-15; Lodgment 2, vol. 3 at 215.  In light of this evidence and all of the surrounding circumstances, the Court finds that no reasonable jury could have found in Petitioner's favor.  <u>Matthews</u>, 485 U.S. at 63; <u>Bush</u>, 626 F.3d at 539.  The California Supreme Court's decision, therefore, was not contrary to clearly established Supreme Court precedent.  Accordingly, this Court finds that the state court's conclusion was correct and that fairminded jurists easily could find the state court's ruling consistent with relevant Supreme Court precedent.

There also is no question that it was proper for the trial judge to make the decision *not* to give the consent instruction, as opposed to allowing the jury to decide if Petitioner's mistaken belief that he had consent was reasonable.  The <u>Matthews</u> Court did not leave it to the jury to decide whether sufficient evidence existed to justify the requested instruction and this Court has found no Supreme Court authority supporting Petitioner's argument.  As the Ninth Circuit explained,

> A defendant "has the right to have a jury resolve disputed factual issues. However, where the evidence, even if believed, does not establish all of the elements of a defense, ... the trial judge need not submit the defense to the jury."

<u>U.S. v. Perdomo-Espana</u>, 522 F.3d 983, 987 (9th Cir. 2008) (quoting <u>United States v. Arellano-Rivera</u>, 244 F.3d 1119, 1125 (9th Cir. 2001)).  As explained above, this Court finds that the evidence Petitioner cited did not justify the giving of a consent instruction.  Thus, Petitioner's argument that it was for the jury, not the trial judge, to decide whether his mistaken belief that he had consent was reasonable lacks merit.

Finally, Petitioner argues that the trial court violated his Sixth Amendment right to present a defense by refusing to give the consent instruction.  Pet'r Mem. at 1.  The Supreme Court has made clear that "[w]hether rooted directly in the Due Process Clause of the Fourteenth

Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." Clark v. Arizona, 548 U.S. 735, 789 (2006) (internal quotations omitted).  The cases invoking this principle have dealt with the testimony of defense witnesses or the exclusion of evidence, not restrictions on the defendant's ability to present an affirmative defense.  Gilmore v. Taylor, 508 U.S. 333, 343 (1993).  In Gilmore, the defendant sought to rely on this case law in arguing that "the right to present a defense includes the right to have the jury consider it, and that confusing instructions on state law which prevent a jury from considering an affirmative defense therefore violate due process."  Id. at 343-44.  The Supreme Court rejected this argument, explaining that "such an expansive reading of our cases would make a nullity of the rule reaffirmed in *Estelle v. McGuire,* [502 U.S. 62, 67-68 (1991)] that instructional errors of state law generally may not form the basis for federal habeas relief."  Id. at 344.

In light of this precedent, the Court finds the Sixth Amendment inapplicable to Petitioner's claim.  As an initial matter, Petitioner did not attempt to present any evidence at trial, see Lodgment 2, vol. 3 at 238 (transcript reflecting that the defense rested moments after the prosecution rested its case), so he was not deprived of a meaningful opportunity to present a defense in that respect.  In regard to the absent jury instruction, the Court finds the reasoning of Gilmore equally applicable here.  Though Gilmore argued the instructions were confusing, while Petitioner argues the consent instruction was not given at all, both contend the end result was that they were deprived of the right to have the jury consider an important defense.  Because instructional errors by state courts generally  are not the province of federal courts, see Estelle, 502 U.S. at 67-68, and because this Court already has determined that no violation of federal law occurred, see supra, the Court finds that Petitioner's Sixth Amendment argument lacks merit.

In sum, this Court finds that the California Supreme Court's decision was not contrary to clearly established United States Supreme Court precedent.  Though the California Supreme Court did not explain the reasoning behind its decision, this Court has analyzed possible arguments and theories supporting the state court's decision and finds that no fairminded jurist

1  could find the state court's ruling inconsistent with relevant Supreme Court precedent.

2  Therefore, the Court **RECOMMENDS** that Petitioner's first claim for relief be **DENIED**.

3  **B.    Petitioner's Alleged Deprivation of his Right to a Unanimous Jury Verdict**

4          In his second claim for relief, Petitioner challenges his conviction under California's One

5  Strike sentencing law.  Pet. at 7; Pet'r Mem. at 2-5.  This law provides, in relevant part:

6          (a) Except as provided in subdivision (j), (l), or (m), any person who is convicted
           of an offense specified in subdivision (c) under one or more of the circumstances
7          specified in subdivision (d) or under two or more of the circumstances specified in
           subdivision (e) shall be punished by imprisonment in the state prison for 25 years
8          to life.

9          (b) Except as provided in subdivision (a), (j), (l), or (m), any person who is
           convicted of an offense specified in subdivision (c) under one of the circumstances
10         specified in subdivision (e) shall be punished by imprisonment in the state prison
           for 15 years to life.

11
           (c) This section shall apply to any of the following offenses:
12
               (1) Rape, in violation of paragraph (2) or (6) of subdivision (a) of Section
13             261.

14                                         . . .

15             (6) Sodomy, in violation of paragraph (2) or (3) of subdivision (c), or
               subdivision (d), of Section 286.
16
17                                         . . .

           (d) The following circumstances shall apply to the offenses specified in subdivision
18         (c):

19                                         . . .

20             (4) The defendant committed the present offense during the commission of
               a burglary of the first degree, as defined in subdivision (a) of Section 460,
21             with intent to commit an offense specified in subdivision (c).

22                                         . . .

23         (e) The following circumstances shall apply to the offenses specified in subdivision
           (c):
24
25                                         . . .

               (3) The defendant personally used a dangerous or deadly weapon or a
26             firearm in the commission of the present offense in violation of Section
               12022, 12022.3, 12022.5, or 12022.53.
27
                                           . . .
28

13

Penal Code § 667.61(a)-(e) (West 2010).  In this case, the trial court instructed the jury that if it found Petitioner guilty of forcible sodomy or forcible rape, it must then "decide whether, for each crime, the People have proved the additional allegation that the defendant committed the crime during the commission of burglary with the intent to commit sodomy by use of force and/or forceable (sic) rape."  Lodgment 2, vol. 3 at 286-87.  The jury's guilty finding on each charge under the One Strike sentencing law increased the sentence to twenty-five years to life.  See Penal Code § 667.61(a).

Petitioner argues that he was denied his Sixth Amendment and due process rights to notice of the exact charges against him because the government did not specify in its charging document which forcible sex crime under Penal Code § 667.61(c) it believed he had the intent to commit.  Pet'r Mem. at 3.  Additionally, Petitioner contends he was denied his right to a unanimous jury verdict because some jurors could have convicted him under the belief that he committed burglary with the specific intent to rape the victim while others could have convicted him under the belief that he had the specific intent to sodomize the victim.  Pet. at 7; Pet'r Mem. at 2-4.  According to Petitioner, this lack of specificity violated Apprendi v. New Jersey, 530 U.S. 66 (2000) and Cunningham v. California, 549 U.S. 270 (2007), because when a defendant's specific intent increases the statutory maximum for the offense, that intent is tantamount to an element of the offense.  Pet'r Mem. at 4.  Petitioner further clarifies this point by explaining that the statutory maximum for rape or sodomy is eight years, but the sentence increased to twenty-five years to life for each crime when Petitioner was convicted under the One Strike law.  Id.; see also Penal Code § 286(c)(2) (sentencing range for sodomy by use of force) and Penal Code § 264(a) (sentencing range for forcible rape).  Thus, he argues that the prosecution was required to plead, and a unanimous jury was required to find, that Petitioner had the specific intent to commit a specific sex crime under Penal Code § 667.61(c), not just any one of the nine options.  Pet'r Mem. at 4.

Respondent contends that Petitioner's claim lacks merit because jury unanimity is not constitutionally mandated.  Resp't Mem. at 7.  Additionally, Respondent notes that the California Court of Appeal reasonably and properly applied state law in holding that unanimity is not

1    required by Penal Code § 667.61.  Id.  According to Respondent, that court's conclusion was a

2    reasonable application of Supreme Court authority.  Id. (citing Schad v. Arizona, 501 U.S. 624,

3    631-32 (1991) (plurality)).  Therefore, Respondent argues that habeas relief must be denied.

4    Id.

5        Respondent is correct that "a state criminal defendant, at least in noncapital cases, has

6    no federal right to a unanimous jury verdict."  Schad, 501 U.S. at 634 n.5; Johnson v. Louisiana,

7    406 U.S. 356, 359-63 (1972); Apodaca v. Oregon, 406 U.S. 404, 410-12 (1972) (plurality).  This

8    does not wholly determine the issue, however, because Petitioner's question turns on whether

9    it was constitutionally permissible to allow jurors to reach a verdict on the One Strike Law

10   enhancement without specifying their findings as to Petitioner's intent when he committed the

11   burglary.  In other words, as the Supreme Court explained in Schad, "[t]he issue in this case,

12   then, is one of the permissible limits in defining criminal conduct, as reflected in the instructions

13   to jurors applying the definitions, not one of jury unanimity."  Schad, 501 U.S. at 631.  This issue

14   implicates due process rights.  See id. at 632-33.

15        Schad is instructive in this case.   In Schad, the Supreme Court addressed very similar

16   facts.  A grand jury indicted Schad on one count of first-degree murder, which was defined under

17   Arizona law as "murder which is … wilful, deliberate or premeditated … or which is committed

18   … in the perpetration of, or attempt to perpetrate, … robbery."  Schad, 501 U.S. at 628 (quoting

19   Ariz. Rev. Stat. Ann. § 13-452 (Supp. 1973)).  During Schad's retrial[3], the prosecutor advanced

20   theories of both felony murder and premeditated murder and the trial court instructed the jury

21   that first degree murder encompassed both premeditated murder and murder committed in an

22   attempt to commit robbery.  Id. at 629.  The verdict form did not require the jury to specify

23   which murder theory they found persuasive, only whether Schad was guilty of first-degree

24   murder or second-degree murder or not guilty.  Id.  The jury found Schad guilty of first-degree

25   murder and the Arizona Supreme Court affirmed the conviction.  Id.

26   ///

27

28       [3] Schad was convicted and sentenced to death, but the conviction was set aside on collateral review.  Schad, 501 U.S. at 628-29.  The government apparently opted to retry the case.

1    Though Schad attempted to frame the issue before the United States Supreme Court as

2    whether the Sixth, Eighth, and Fourteenth Amendments require a unanimous jury verdict in state

3    capital cases, the Court concluded that:

> [Schad's] real challenge is to Arizona's characterization of first-degree murder as
> a single crime as to which a verdict need not be limited to any one statutory
> alternative, as against which he argues that premeditated murder and felony
> murder are separate crimes as to which the jury must return separate verdicts. The
> issue in this case, then, is one of the permissible limits in defining criminal conduct,
> as reflected in the instructions to jurors applying the definitions, not one of jury
> unanimity.

8    Id. at 630-31.  In deciding this issue, the Court noted that its cases "reflect a long-established

9    rule of the criminal law that an indictment need not specify which overt act, among several

10   named, was the means by which a crime was committed." Id. at 631. The Court concluded that

11   "the rule that the jury need not agree as to mere means of satisfying the *actus reus* element of

12   an offense should [] apply equally to alternative means of satisfying the element of *mens rea*."

13   Id. at 632.

14        The Court, however, acknowledged that the Due Process Clause does place limits on a

15   state's "capacity to define different courses of conduct, or states of mind, as merely alternative

16   means of committing a single offense, thereby permitting a defendant's conviction without jury

17   agreement as to which course or state actually occurred." Id.  For instance, the law is clear that

18   (1) a statute prohibiting conduct cannot be so vague that people of common intelligence would

19   not understand its meaning, and (2) a person may be criminally punished only upon proof of

20   specific illegal conduct.  Id. at 632-33.  However, the Court further noted that federal courts

21   must abstain from "substitut[ing] [their] own interpretations of state statutes for those of a

22   State's courts." Id. at 636.  "If a State's courts have determined that certain statutory

23   alternatives are mere means of committing a single offense, rather than independent elements

24   of the crime, [federal courts] simply are not at liberty to ignore that determination and conclude

25   that the alternatives are, in fact, independent elements under state law." Id.  Because the

26   Arizona Supreme Court had determined that premeditation and commission of a felony simply

27   were alternate means of satisfying the *mens rea* element for first degree murder (i.e. not

28   independent elements of the crime), the Court concluded that the only issue before it was

16

1    whether Arizona's choice was unconstitutional.  Id. at 637.

2          Here, in rejecting Petitioner's argument regarding the proper interpretation of Penal Code

3    § 667.61, the court of appeal explained its reasoning as follows:

4          The Legislature enacted the one strike law "to ensure serious and dangerous
     sex offenders would receive lengthy prison sentences upon their first conviction."
5    (People v. Palmore (2000) 79 Cal.App.4th 1290, 1296, 94 Cal.Rptr.2d 784
     (Palmore), citing Sen. Com. on Judiciary, Analysis of Sen. Bill No. 26 (1993-1994
6    1st Ex.Sess.) as amended May 4, 1994, p. 15.) Section 667.61, subdivisions (a)
     and (d) prescribe a sentence of 25 years to life where the accused is convicted of
7    specified sex offenses "where the nature or method of the sex offense 'place[d] the
     victim in a position of elevated vulnerability.' [Citation.]" (Palmore, supra, 79
8    Cal.App.4th at pp. 1295-1296, 94 Cal.Rptr.2d 784, citing Assem. Com. on Public
     Safety, Analysis of Sen. Bill No. 26 (1993-1994 1st Ex.Sess.) as amended May 25,
9    1994, pp. 2-3, italics added.) A true finding on a section 667.61, subdivisions (a)
     and (d)(4) allegation results in a sentence of 25 years to life where, as here, the
10   accused is convicted of forcible sodomy and rape under the aggravating
     circumstance that those crimes were committed during the commission of
11   residential burglary "with intent to commit an offense specified in subdivision (c)."

12         Hernandez contends that the trial court erred in failing to instruct the jury
     that the One Strike allegations in counts 1 and 2 require juror unanimity regarding
13   the predicate acts. His argument suggests that the predicate acts did not consist
     of burglary, but forcible sodomy and rape, two of nine sexual offenses listed in
14   section 667.61, subdivision (c), which were the alleged objects of his intent to
     enter the victim's apartment. In supplemental briefing, Hernandez expands this
15   point, arguing that the words "an offense" in section 667.61, subdivision (d)(4)
     mean the prosecutor must allege a specific sex offense listed in subdivision (c).

16
17         The trial court instructed the jury with CALCRIM No. 1378 as follows, giving
     the jury the option of finding that Hernandez committed burglary with the intent
18   to commit one or two section 667.61, subdivision (c) offenses:

19         "If … you find the defendant guilty of the crimes charges in counts one and
     two, you must then decide whether, for each crime, the People have proved the
20   additional allegation that the defendant committed the crime during the
     commission of burglary with the intent to commit sodomy by use of force and/or
21   [forcible] rape. [¶] You must decide whether the People have proved the allegation
     for each crime and return a separate finding for each crime. [¶] To prove this
22   allegation, the People must prove that; one, the defendant entered an inhabited
     house; two, when the defendant entered the house, he intended to commit
23   sodomy by use of force and/or [forcible] rape and; three, after the defendant
     entered the house, he committed sodomy by use of force and[/]or [forcible] rape.
24   [¶] … [¶] The People have the burden of proving each allegation beyond a
     reasonable doubt. If the People have not met this burden, you must find that the
25   allegation has not been proved." (Italics added.)

26         Likewise, the verdict forms for count 1 for sodomy and count 2 for rape
     included the following language: "And we further find the allegation that said
27   defendant, CARLOS MORALES HERNANDEZ, did so during the commission of a
     burglary as defined in Section 460(a) with the intent to commit a forcible sex
28   crime, in violation of Penal Code section 261(a)(2) [rape] or 286(c)(2) [sodomy],
     within the meaning of PENAL CODE SECTION 667.61(a)(c)(d) to be true." (Italics

                                            17

added.) The jury found the allegations to be true.

Hernandez contends the trial court erred in failing to instruct the jury sua sponte with a modified version CALCRIM No. 3500, the unanimity instruction, to ensure that all the jurors agreed on the specific section 667.61, subdivision (c) offense Hernandez intended to commit when he entered the victim's house. He also argues that given the ambiguous language of the verdict forms, the error was prejudicial. Hernandez explains that "without a unanimity instruction and without proper verdict forms, some of the jurors may have believed Mr. Hernandez guilty of burglary with the specific intent of *committing* sodomy while other jurors believed him guilty of burglary with the specific intent of committing *rape*, resulting in no unanimous true finding." We reject Hernandez's contention and conclude that burglary is the predicate act or aggravating circumstance that triggered the life sentence under section 667.61, subdivisions (a) and (d)(4), and, under well-established legal principles, the jury was not required to unanimously agree on the specific sex offense or offenses that were the object of his intent when he entered the victim's residence.

A criminal verdict must be unanimous with the members of the jury agreeing that the defendant is guilty of a specific crime. (*People v. Russo* (2001) 25 Cal.4th 1124, 1132, 108 Cal.Rptr.2d 436, 25 P.3d 641.) Thus, "when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act." (*Ibid.*) The unanimity instruction " 'is designed in part to prevent the jury from amalgamating evidence of multiple offenses, no one of which has been proved beyond a reasonable doubt, in order to conclude beyond a reasonable doubt that a defendant must have done *something* sufficient to convict on one count.' [Citation.]" (*Ibid.*) "The same reasoning should, in general, apply to enhancements as well as the crimes that underlie them." (*People v. Robbins* (1989) 209 Cal.App.3d 261, 265, 257 Cal.Rptr. 60.)

The unanimity rule does not apply where the information charges a discrete crime but leaves room for disagreement on the theory of how the crime was committed. (*People v. Russo, supra,* 25 Cal.4th at p. 1132, 108 Cal.Rptr.2d 436, 25 P.3d 641.) This exception applies to burglary, where the prosecution must prove entry with a specified intent, that is, entry "with intent to commit grand or petit larceny or any felony...." (§ 459.) Thus, "[i]f … the evidence showed a single entry, but possible uncertainty as to the exact burglarious intent, that uncertainty would involve only the theory of the case and not require the unanimity instruction. [Citation.]" (*Id.* at p. 1133, 108 Cal.Rptr.2d 436, 25 P.3d 641.) In other words, where burglary is the charged offense, the jury is not required to agree on which specific intent the burglar harbored at the time he entered the residence.

. . .

Next, we note that "[g]enerally, the trial court's reliance on erroneous reasoning is no basis for reversal if the decision is correct. [Citation.] We review the correctness of the challenged ruling, not of the analysis used to reach it." (*In re Baraka H.* (1992) 6 Cal.App.4th 1039, 1045, 8 Cal.Rptr.2d 221.)

Finally, we determine which predicate act or aggravated circumstance the Legislature intended to trigger a sentence of 25 years to life under section 667.61, subdivisions (a) and (d)(4). In determining legislative intent, we " ' "turn[ ] first to the words themselves for the answer" [citations], giving to them "their ordinary and generally accepted meaning" [citation]. Moreover, "the various parts of a

18

statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole." [Citation].... Finally, we keep in mind that " '[t]he defendant is entitled to the benefit of every reasonable doubt, whether it arise (sic) out of a question of fact, or as to the true interpretation of words or the construction of language used in a statute.' " [Citations.]' [Citation.]" (*Palmore, supra,* 79 Cal.App.4th at p. 1295, 94 Cal.Rptr.2d 784.)

The structure of section 667.61, subdivision (a) and (d) demonstrates that burglary is one of five possible aggravating circumstances that trigger the sentence of 25 years to life. The other subdivision (d) circumstances include: (1) previous conviction of a sex offense listed in section 667.61, subdivision (c); (2) kidnapping of the victim of the present offense; (3) infliction of aggravated mayhem or torture on the victim of the present offense; and (5) commission of the present sex offense in concert and in the commission of any act described in subdivision (d)(2), (d)(3) or (d)(4).

The burglary circumstance is different from the other circumstances listed in section 667.61, subdivision (d) because it requires proof of specific intent on entry to a residence. Section 459, the general burglary statute, requires proof of entry "with intent to commit grand or petit larceny or *any felony* ...." (Italics added.) In section 667.61, the Legislature expressly narrowed the required intent at the time of entry to include not the specific intent to commit "any felony," but the specific intent to commit "an offense"-that is, any felony sex offense-listed in section 667.61, subdivision (c). Language limiting the type of felonious intent to be proved is consistent with the purpose of 667.61 to increase punishment to a life sentence where the way the defendant committed a sex offense placed the victim in a position of elevated vulnerability. (*Palmore, supra,* 79 Cal.App.4th at p. 1296, 94 Cal.Rptr.2d 784.) There is no legally significant difference in the words "any felony" in section 459 and the words "an offense" in section 667.61, subdivision (d)(4). Nothing in the language of section 667.61 negates our conclusion that the burglary exception to the unanimity requirement applies here. Thus, the question whether Hernandez entered the victim's residence with the intent to commit forcible sodomy or rape involves only the theory of how the crime was committed, and the jury was not required to agree unanimously that he entered with the intent to commit one or both of those sex offenses. (*People v. Russo, supra,* 25 Cal.4th at pp. 1132-1133, 108 Cal.Rptr.2d 436, 25 P.3d 641.)

Because we conclude that the relevant predicate act was burglary, not the sex offenses alleged as objects of Hernandez's specific intent on entering the residence, we reject as meritless his claim that the jury's true finding violated *Cunningham v. California* (2007) 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d 856, *Apprendi v. New Jersey* (2000) 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435, or *Richardson v. United States* (1999) 526 U.S. 813, 119 S.Ct. 1707, 143 L.Ed.2d 985.

People v. Hernandez, 180 Cal. App. 4th 337, 346-349 (4th Dist. 2009); Lodgment 10 at 9-15.[4]

---

[4] This conclusion reflects current California law on this issue as the California Supreme Court has not yet addressed whether or not a jury must make a unanimous finding as to the specific intent required under Penal Code § 667.61(d)—i.e. whether the jury must agree which of the sex offenses enumerated in section (c) the defendant intended to commit during the burglary—and the state appellate court's published opinion in this case is the most recent California Court of Appeal opinion addressing this issue.

This conclusion is consistent with federal constitutional law.  In this case, the state court[5] interpreted a California statute (Penal Code § 667.61) and concluded that burglary was the predicate act the California Legislature intended to trigger an enhanced sentence and "the question whether Hernandez entered the victim's residence with the intent to commit forcible sodomy or rape involves only the theory of how the crime was committed."  Lodgment 10 at 13-15.  Similar to <u>Schad</u>, this presents a scenario where the state court has concluded that the intent to commit forcible rape and the intent to commit forcible sodomy are not independent elements of the crime, but rather alternative means of satisfying the *mens rea* element of burglary.  Thus, the only question remaining before this Court is whether the state court's decision is unconstitutional.  <u>Schad</u>, 501 U.S. at 637.

In determining whether or not a state court's conclusion about the specificity required by a state statute offends due process, the <u>Schad</u> Court was unable to establish a bright-line test.  <u>Id.</u> at 639.  Instead, the Court first looked to whether the state had a long history of defining the crime in a particular way and whether other states similarly defined the same offense.  <u>Id.</u> at 640.  Here, California's One Strike Law (Penal Code § 667.61) has been in effect since 1994.  <u>People v. Wutzke</u>, 28 Cal. 4th 923, 929 (2002).  While this Court has been unable to find any other California cases interpreting Cal. Penal Code § 667.61(d)(4) specifically, it appears California has long interpreted its general burglary statute as not requiring unanimity as to the felonious intent prong.  As the California Supreme Court explained,

> [W]here the evidence shows only a single discrete crime but leaves room for disagreement as to exactly how that crime was committed or what the defendant's precise role was, the jury need not unanimously agree on the basis or, as the cases often put it, the "theory" whereby the defendant is guilty. (See generally *People v. Jenkins* (2000) 22 Cal.4th 900, 1024–1026, 95 Cal.Rptr.2d 377, 997 P.2d 1044.) The crime of burglary provides a good illustration of the difference between discrete crimes, which require a unanimity instruction, and theories of the case, which do not. Burglary requires an entry with a specified intent. (Pen.Code, § 459.)

---

[5]  While it was the California Court of Appeal, not the California Supreme Court, that provided a reasoned opinion on this issue, this Court believes it likely the same reasoning supported the California Supreme Court's silent denial.  <u>See generally</u> <u>Harrington</u>, 131 S.Ct. at 786 (explaining that if the state court provided no explanation of its reasoning, "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision...");  <u>see also</u> <u>Ylst</u>, 501 U.S. at 803-04 (presuming that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground").

10cv2360-WQH (BLM)

1
2
3
4

> If the evidence showed two different entries with burglarious intent, for example, one of a house on Elm Street on Tuesday and another of a house on Maple Street on Wednesday, the jury would have to unanimously find the defendant guilty of at least one of those acts. If, however, the evidence showed a single entry, but possible uncertainty as to the exact burglarious intent, that uncertainty would involve only the theory of the case and not require the unanimity instruction. (*People v. Failla* (1966) 64 Cal.2d 560, 567–569, 51 Cal.Rptr. 103, 414 P.2d 39.)

5   People v. Russo, 25 Cal. 4th 1124, 1132-1133 (2001).  The appellate court's ruling in this case,

6   then, appears in keeping with over four decades of California precedent regarding when

7   unanimity instructions are required for burglary charges.[6]

8        While, as the Court in Schad explained, California's history is a significant indicator of

9   "what we as a people regard as fundamentally fair and rational ways of defining criminal

10  offenses," this history is "nevertheless always open to critical examination."  Schad, 501 U.S. at

11  643.  One additional way the Schad Court analyzed whether two means of satisfying the *mens*

12  *rea* element of a single offense were "so disparate as to exemplify two inherently separate

13  offenses" was to consider whether the two means "reasonably reflect[ed] notions of equivalent

14  blameworthiness or culpability." Id.  Here, forcible rape and forcible sodomy are the two means

15  under consideration and they quite reasonably could, and often are, treated as moral

16  equivalents.  Both involve violations of a very personal nature through use of force.  Moreover,

17  they are exceedingly more similar in nature than the two means found equivalent by the Schad

18  Court— murder by premeditation and felony murder.  Thus, this Court concludes that the

19  prosecution's failure to plead a specific *mens rea* for burglary under California Penal Code

20  § 667.61(d)(4), and the trial court's failure to require jury unanimity as to the same, did not

21  place this case "beyond the constitutional bounds of fundamental fairness and rationality."[7]

22  Schad, 501 U.S. at 645.

23  ///

24
25
[6]  Neither party provided any information regarding whether other states similarly define equivalent enhancement statutes or even their general burglary laws, and this Court has not located any other state statutes comparable to California Penal Code § 667.61(d)(4).

26
27
28
[7]  Because the Court finds that further specificity in the jury instruction was not required, the Court also rejects Petitioner's claims under Apprendi v. New Jersey, 530 U.S. 66 (2000) and Cunningham v. California, 549 U.S. 270 (2007).  In other words, because the intent options under California Penal Code § 667.61(c) were not separate elements of the crime, as Petitioner alleges, no Apprendi violation occurred.  The jury, not the judge, did decide all facts and elements beyond a reasonable doubt in this case.

10cv2360-WQH (BLM)

Therefore, this Court finds that the California Supreme Court's decision was not contrary to clearly established Supreme Court precedent.  Though the California Supreme Court once again did not explain the reasoning behind its decision, this Court has analyzed possible arguments and theories supporting the state court's decision and finds that no fairminded jurist could find the state court's ruling inconsistent with relevant Supreme Court precedent. Therefore, the Court **RECOMMENDS** that Petitioner's second claim for relief be **DENIED**.

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Judge issue an order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered denying the Petition.

**IT IS ORDERED** that no later than **May 27, 2011**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later that **June 17, 2011**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

DATED:  May 6, 2011

BARBARA L. MAJOR
United States Magistrate Judge

22

10cv2360-WQH (BLM)